EDWARD SMALL *vs.* MERRITT WRIGHT.

Washington.    Opinion February 20, 1883.

*Deed, construction of, reservation in.*

Where the question is whether a certain creek or cove was included or excluded from the premises conveyed by deed, and the evidence renders

it possible for either hypothesis to be true, the fact that the deed reserves to the grantor the use of the cove for certain purposes, has an influence in favor of its inclusion which can be overcome only by other very satisfactory and convincing evidence.

ON REPORT.

Trespass *qu. cl.* and cutting and carrying off the plaintiff's grass and hay.

The writ was dated December 13, 1880. Plea, general issue and brief statement alleging title in Everett S. Wright and that defendant was his tenant.

The question presented was, who was the owner of the flats from which the hay was cut? Each party claimed that such flats were embraced within the description in their respective deeds.

The title of Everett S. Wright was obtained through sundry conveyances from Edward F. Huson, who received his title by deed from Alpheus Crosby, August 24, 1854, and the following is the description in the deed:

" A certain tract of land, or farm, situated in said Machiasport and bounded as follows : Beginning at the west side of the road at the line of land formerly conveyed by Stephen Jones and others to Elisha Tobey, and running west by said line three hundred rods more or less to land formerly of Joseph Libby; thence north by the easterly side line of land last mentioned eighty-three rods more or less to land formerly of Ebenezer Gardiner; thence east by land last mentioned one hundred rods; thence north by the same land eighteen and three-fourths rods to land formerly of Jacob Palmer; thence by land last mentioned fifty four rods more or less to a pine tree or the place where the same stood on a point between the branches of the head of Mill Creek; thence east seven degrees north to the upland at high water mark; thence by high water mark to the west side of the bridge; thence by the west side of the bridge and road to a point due east by compass from the north-east corner of a large rock in the field; thence west about thirteen rods to said corner of said rock; thence south twelve and a half rods; thence east to the west side of the road; and thence by the side of the road to the place of beginning, together with a right appurtenant

to said farm in common with myself and others of landing upon the shore, below the mill dam or the beach or flats extending from high water mark to the creek and from the mill dam southward forty feet, but reserving and excepting from this conveyance to myself my heirs and assigns and the owners of the Butterfield (so called) Mills and mill privilege, the use of the flats of said mill creek, the right to exclude and to stop and to drain off the waters of said creek for operating said mill and for docking and securing timber, and also excepting all rights which Whitneyville and Machiasport Railroad Company have to maintain the railroad, and to use a certain spring near the road."

The plaintiff's title was from two quitclaim deeds from the same Alpheus Crosby; the first was dated January 24, 1855, and contained this description: "This following described real estate situated in said Machiasport and bounded thus: Beginning at the edge of the mill pond at the southern end and eastern side of the town bridge or causeway and running by same side of the bridge, northward across the creek to high water mark,". &c. [bounding premises on the east side of the road and bridge,] "excepting the right of landing granted to Edward F. Huson in my deed to him and reconveyed to me in mortgage by his deed dated, . . . as appurtenant to the farm so conveyed and reconveyed to me. Upon which premises hereby conveyed stand the mills called the Butterfield Mills, which with all their privileges and appurtenances not inconsistent with the reservation aforesaid are included in this conveyance."

The second deed was dated December 16, 1865, and contained the following description: "All my right, title and interest, in and to the Butterfield mill pond and soil under the same not heretofore conveyed to Edward F. Huson or any other grantees to whom I or the persons under whom I claim may have conveyed subject to any mortgage now existing on said property running to me and in my name or in which I have any existing interest."

The opinion states other material facts.

*J. C. Talbot*, for the plaintiff.

*A. McNichol and John F. Lynch*, for the defendant.

PETERS, J. The question mooted in this case is, whether the call in the deed from Crosby to Huson, "thence east seven degrees north to the upland at high water mark," carries the boundary to the upper or to the southerly side of Butterfield cove. The line starts from the head of the cove and strikes upon the one side or the other. The next call, "thence by high water mark to the west side of the bridge," is consistent with either theory. The defendant, claiming under Huson, claims to go to the northerly or upper side of the cove. If he goes there, his land includes the cove ; if not, it excludes it. We think he is right in his contention.

A reference to the history of some of the conveyances touching the premises will help elucidate the controversy. The proprietors of the town, as long ago as in 1804, conveyed to Butterfield and another a farm now owned by Huson, the mills and adjacent property, and included the cove within the description of the premises conveyed, by running on the upper shore at high water mark, on the line now claimed by Huson. The object of including the cove was that Butterfield and partner would have the benefit of controlling it for his mill. To one Day and others, the proprietors deeded the land northerly and easterly of Butterfield's line. So that the line between Butterfield and Day was the line at high water mark on the upper side of the cove. The Butterfield estate came back under a mortgage-foreclosure to the proprietors. In the conveyance of 1804 to Butterfield almost the same call occurs as in the deed to Huson, to wit, "thence east seven degrees north nineteen rods to the upland at high water mark." Probably the call was borrowed from this deed for the deed to Huson. The testimony renders it certain that, in the deed of 1804, the call, "east seven degrees north" ran over to the upper shore, or was intended to.

In 1854 the Butterfield estate was back in Crosby, representing the proprietors, and Crosby owned or represented the land and cove over to high water mark on the upper shore. In 1854 Crosby conveyed to Huson. In 1855 Crosby conveyed to the plaintiff the mill and mill privilege, and some adjacent land. If Crosby did not convey the cove to Huson, he retained the

title in it to himself. What did he want to reserve to himself such a parcel of ·property? If he did not convey the cove to Huson, he excluded Huson from any access to the flats and shore on either side of the cove. Why should he exclude Huson entirely from the shore?

In this situation of things, the plaintiff in 1865, ten years afterwards, gets a release of Crosby's title to the shores. There are implications in this deed that Crosby doubted his ownership in the shores or cove. He deeds his interest for a dollar. He cautiously describes the interest in the Butterfield Pond, "not heretofore conveyed to Edward L. Huson, or any other grantees to whom I or the persons under whom I claim may have conveyed."

The call in the deed next to the one already noticed, confirms the defendant's claim, namely, "thence westerly by the west side of the bridge and road to," &c. &c. This is not consistent with the plaintiff's pretension.

A powerful argument for the defendant's side of the case is the reservation in the deed of Crosby to Huson, which is this: "Reserving and excepting (from this conveyance) to myself, my heirs and assigns and the owners of the so-called Butterfield Mills and mill privilege, the use of the flats of said mill creek, the right to exclude and to stop and to drain off the waters of said creek for operating said mill, and for docking and securing timber." . . . This is most significant evidence of the intention and supposition of the parties. How could the use of flats be reserved if the flats were not conveyed? This use is probably what Crosby intended to pass by his deed to the plaintiff in 1865, not recorded until 1877. How could the grantor to Huson make such a mistake as the plaintiff's view necessarily imposes upon him, as to annex to his deed such a particular, careful and well studied reservation?

The plaintiff relies upon a long continued possession, and some indirect admissions, by Huson's immediate successors, of his right to the possession. This has force, but might naturally be, under the peculiar ownerships and reservations shown by the case. That the plaintiff is entitled to betterments

is not denied. Plaintiff relies upon testimony of witnesses that the course of "east seven degrees north," would strike the lower upland. We think the testimony of witnesses in favor of the contrary position is more satisfactory. Even if the course went in such a direction, there is evidence enough in the case to require its rejection as false demonstration.

The plaintiff very much relies upon his brother's testimony, which really makes strongly for the defendant. He says he run the line for the Huson deed, and run it on to the lower shore; that at the point where the line struck the lower shore he marked a pine tree " 54," and that the tree so marked stood there for many years. This is undoubtedly true. But the description calls for no such landmark. It was discarded intentionally. The witness, brother of plaintiff, explains why. He lays it to the grantor's agent. He says that when he was running out the land for the deed to Huson, Charles Porter, Crosby's agent, was with him. He adds, *"He concluded to let that pool go in with the farm."* He says in other places in his testimony, "I was not present when the deed was made, Crosby to Huson. *If I had been, I would have looked out."* " *Porter did not make the deed as it was run out."*

It is not difficult to see how the plaintiff's pretension grew up. Until the mill went down in 1865, or thereabouts, the flats were not of much consequence to any one. When Huson got his deed the grantor conveyed all but the mill and such privileges as appertained to the mill. The Smalls desired to exclude Huson from the cove at that time, but their wishes did not prevail. They controlled the waters of the cove until 1865, when they could use them no more. Then, to continue their possession, they got a deed of Crosby of such remaining title as he had, if any. He had none. The plaintiff has no case.

*Judgment for defendant.*

APPLETON, C. J., WALTON, DANFORTH, VIRGIN and SYMONDS, JJ., concurred.